UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEVY MONNELLE RUIZ,<br><br>Plaintiff,<br><br>v.<br><br>AUTO STAR MOTORS, INC.,<br><br>Defendant. | No. 2:16-cv-00800-TLN-CKD<br><br><br><br>**ORDER** |

This matter is before the Court on Defendant Auto Star Motors, Inc.'s ("Defendant") Motion to Dismiss. (ECF No. 9.) Plaintiff Levy Monnelle Ruiz ("Plaintiff") opposes the motion. (ECF No. 10.) The Court has carefully considered the arguments raised by the parties. For the reasons set forth below, the Defendant's motion is GRANTED in part and DENIED in part.

**I.  FACTUAL BACKGROUND[1]**

On or about November 15, 2015, Plaintiff visited Defendant's car dealership and agreed to purchase a particular 2012 Honda Civic ("Vehicle"). (ECF No. 1 at ¶¶ 5–7.) Plaintiff paid $1,035.00 as a down payment and financed the remainder of the sale price through Defendant. (ECF No. 1 at ¶ 8.) The agreed-upon purchase price of the Vehicle was $13,200.00, with a total sale price of $23,697.72, including taxes, fees, and finance charges. (ECF No. 1 at ¶ 7.)

---

[1] The facts are taken from Plaintiff's Complaint (ECF No. 1). *See Adams v. U.S. Forest Serv.*, 671 F.3d 1138, 1142–43 (9th Cir. 2012) ("In evaluating a Rule 12(b)(6) motion, the court accepts the complaint's well-pleaded factual allegations as true and draws all reasonable inferences in the light most favorable to the plaintiff.").

1

Defendant advised Plaintiff that she was approved for financing the same day she visited Defendant's dealership. (ECF No. 1 at ¶¶ 9, 17.) In particular, Defendant obtained her credit report and advised her that she had been approved for financing on the terms contained in a retail installment contract (the "Contract") that she signed before leaving Defendant's dealership with the Vehicle. (ECF No. 1 at ¶¶ 10, 17, 20.)

On or about November 20, 2015, Defendant informed Plaintiff that Defendant had been unable to assign her loan to a third party bank and demanded Plaintiff return to the dealership with a cosigner or surrender the Vehicle. (ECF No. 1 at ¶ 18.) Plaintiff, under protest, surrendered the Vehicle to Defendant. (ECF No. 1 at ¶ 22.) Plaintiff states she never received a written notice explaining why Defendant revoked its extension of credit and why Defendant cancelled the Contract. (ECF No. 1 at ¶ 23.)

## II. STANDARD OF LAW

A motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Federal Rule of Civil Procedure 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Under notice pleading in federal court, the complaint must "give the defendant fair notice of what the claim … is and the grounds upon which it rests." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

On a motion to dismiss, the factual allegations of the complaint must be accepted as true. *Cruz v. Beto*, 405 U.S. 319, 322 (1972). A court is bound to give plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963). A plaintiff need not allege "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief." *Twombly*, 550 U.S. at 570.

Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of factual allegations." *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") Moreover, it is inappropriate to assume that the plaintiff can prove facts that it has not alleged or that the defendants have violated the … laws in ways that have not been alleged [.]" *Associated Gen. Contractors of Cal., Inc.v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 697 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 680. While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. This plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

In ruling upon a motion to dismiss, the court may only consider the complaint, any exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201. *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu Motors Ltd. v. Consumers Union of United States, Inc.*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998).

If a complaint fails to state a plausible claim, "'[a] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 484, 497 (9th Cir. 1995)).

### III. ANALYSIS

Defendant moves to dismiss each of the claims in the Complaint for failure to state a claim upon which relief may be granted. (ECF No. 9.) Those claims are as follows: (1) violation of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq*.; (2) violation of the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691, *et seq*.; (3) violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq*.; (4) breach of "good faith and fair dealing obligation"; and (5) fraud and misrepresentation. (ECF No. 1.) In her opposition, Plaintiff consented to the dismissal of her third and fifth claims. (ECF No. 10 at 2 n.1.) The Court will address the motion as to the remaining claims in order.

#### A. Claim I: Violation of TILA

Plaintiff wanted to buy a car from Defendant, a car dealer, on credit. The Court will assume that Defendant was a creditor within the meaning of TILA for purposes of this motion. As discussed in more detail below, TILA requires creditors to make specific disclosures to consumers in connection with covered consumer credit transactions. There is no dispute that Defendant made those disclosures in connection with the parties entering into the Contract.

The question is whether Defendant, nevertheless, violated TILA by inserting into the Contract the following provision (where Defendant is "Seller"):

> **Seller's Right to Cancel.** If Buyer and Co-Buyer sign here, the provisions of the Seller's Right to Cancel section on the back giving the Seller the right to cancel if Seller is unable to assign this contract to a financial institution will apply.
>
> **Seller's Right to Cancel**. Seller agrees to deliver the vehicle to you on the date this contract is signed by Seller and you. You understand that it may take a few days for Seller to verify your credit and assign the contract. You agree that if Seller is unable to assign the contract to any one of the financial institutions, with whom Seller regularly does business under an assignment acceptable to Seller, Seller may cancel this contract.

(ECF No. 10 at 8–10.)[2] This purely legal question is an issue of first impression in this Circuit.

---

[2] The Complaint does not attach the Contract. Likewise, it does not contain the text of the so-called "Seller's Right to Cancel provision." Nevertheless, the Court can consider the text of this provision in resolving this motion as this text is undisputed, the provision is central to Plaintiff's claim, and the Complaint refers to the document in question. *United States v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011); *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

4

However, to winnow the parties' submissions to this question, a brief preliminary discussion is required.

### i. *Preliminary Discussion*

"Congress enacted the Truth in Lending Act in 1968 to strengthen the 'informed use of credit' by requiring meaningful disclosure of credit terms to consumers." *In re Ferrell*, 539 F.3d 1186, 1189 (9th Cir. 2008) (quoting 15 U.S.C. § 1601(a)). The purpose of TILA is to:

> assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices.

*Id*. (quoting 15 U.S.C. § 1601(a).)

TILA "requires a creditor to disclose information relating to such things as finance charges, annual percentage rates of interest, and borrowers' rights, and it prescribes civil liability for any creditor who fails to do so." *Koons Buick Pontiac GMC, Inc. v. Nigh*, 543 U.S. 50, 54 (2004) (internal citations omitted). "To insure that the consumer is protected . . . TILA and accompanying regulations must be absolutely complied with and strictly enforced." *Jackson v. Grant*, 890 F.2d 118, 120 (9th Cir. 1989) (original alteration marks omitted). If the required disclosures are not made, a plaintiff may recover even if she has not sustained "any actual damages." *Lea v. Buy Direct, L.L.C.*, 755 F.3d 250, 254 (5th Cir. 2014).

For purposes of this motion, the Court will assume that Plaintiff is correct that the transaction arising out of the Contract is a closed-end consumer transaction governed by TILA. Section 1638(a) "sets forth the disclosures that creditors must make in closed-end consumer credit transactions[.]" *In re Ferrell*, 539 F.3d at 1189. "The specific content and timing of the disclosures are set forth in Regulation Z, which was adopted by the Federal Reserve Board in support of TILA." *Bragg v. Bill Heard Chevrolet, Inc.*, 374 F.3d 1060, 1065 (11th Cir. 2004). "The disclosures required by TILA must be made 'before consummation of the transaction.'" *Lea*, 755 F.3d at 253 (quoting 12 C.F.R. § 226.17(b)). "Consummation means the time that a consumer becomes contractually obligated on a credit transaction." *Id*. (citing 12 C.F.R. 226.2(a)(13)). "When a consumer 'becomes contractually obligated' is, in turn, determined by

looking to state law[.]" *Jackson*, 890 F.2d at 120.

Having carefully reviewed Plaintiff's submissions, the Court understands her primary argument to be the purely legal question identified at the outset of this Section of the Court's Order. At times, however, Plaintiff appears to elide this argument with two other arguments, neither of which can withstand close scrutiny. This blurring was, at times, confusing. To avoid confusion herein, the Court refers to these other arguments as Plaintiff's "preliminary arguments." The Court will briefly examine each of them.

The first preliminary argument proceeds as follows: "TILA and its enabling regulations require the creditor to make disclosures before consummation of the transaction." (ECF No. 10 at 9.) At least for purposes of her first preliminary argument, Plaintiff contends that the inclusion of the Seller's Right to Cancel provision can only have two possible legal consequences — either it "prolongs consummation of the contract to an uncertain point in the future" or it "nullifies consummation altogether." (ECF No. 10 at 8.) In her view, "either scenario" constitutes a violation of the requirement to make TILA compliant disclosures "before [the] consummation of transaction." (ECF No. 10 at 8–9.)

There is an obvious problem with Plaintiff's first preliminary argument. It causes the argument to fail even if her legal premises are accepted. If the Seller's Right to cancel provision "*prolongs consummation* of the contract *to* an uncertain *point in the future*" or it "*nullifies consummation* altogether," then the disclosures contained in the Contract must have been *before* the consummation of the transaction (if it ever took place). (ECF No. 10 at 8–9 (emphasis added).) Thus, under her own theory, there would have been no TILA violation, as Plaintiff acknowledges the disclosures themselves were TILA compliant.

The Court now turns to Plaintiff's second preliminary argument, which proceeds as follows: a creditor would violate TILA by inserting a provision into a contract that authorized it to "subsequent[ly] change" the TILA disclosures at its "sole and arbitrary discretion," even if the contract at issue otherwise made the disclosures required by TILA. (ECF No. 10 at 8–10.) The Court will assume for purposes of this motion that such a clause would violate TILA. The problem with Plaintiff's argument is the text of Seller's Right to Cancel provision in the Contract.

6

If Defendant is "unable to assign the [C]ontract to any one of the financial institutions, with whom [Defendant] regularly does business under an assignment acceptable to [Defendant], [Defendant] may *cancel*" the Contract. (ECF No. 10 at 8 (emphasis added).) The Right to Cancel provision simply cannot be reasonably read to authorize Defendant to *change the contents of its TILA disclosures at all*, let alone in its discretion.

The Court will make one more point before proceeding. Taking Plaintiff's allegations as true, the Court agrees with Plaintiff's position that, under California law, the Contract was a "valid and completed contract" once she signed it. (ECF No. 10 at 5.) That is, Plaintiff was "contractually obligated" within the meaning of TILA at that point. The Seller's Right to Cancel provision *does not undo this*. *Buie v. Palm Springs Motors, Inc.*, No. EDCV 00-00168 VAP, 2001 WL 34570064, at *4 (C.D. Cal. May 14, 2001). *Buie* involved a similar provision.[3] *Id*. The district court there concluded that the contract was "consummated upon signing" for purposes of TILA (looking to California law), even though it could be "rescinded by the dealer." *Id*. (emphasis added). The Court agrees with that conclusion. Plaintiff is no less contractually obligated because *Defendant* has the right to cancel the Contract in a specified circumstance. Accordingly, the Court finds the transaction arising from the Contract consummated upon the signing of the Contract by Plaintiff.

          *ii.*    *Whether TILA is violated by the Seller's Right to Cancel provision?*

Defendant argues it cannot be held liable for a TILA violation for entering into a Contract that "on its face clearly set forth all of the requirements under . . . TILA." (ECF No. 9-1 at 5.) Plaintiff argues the Seller's Right to Cancel provision renders the otherwise properly disclosed "credit terms . . . meaningless" or "illusory" because Defendant "reserve[s to itself] a unilateral and arbitrary ability to rescind the contract." (ECF No. 10 at 8–10.)

As an initial matter, Plaintiff has cited no authority for the proposition that an otherwise TILA compliant contract may not simultaneously contain a provision authorizing the creditor to cancel the contract if that creditor is "unable to assign the contract to any one of the financial

---

[3] The text of the *Buie* provision is as follows: "In consideration of seller agreeing to deliver the vehicle, buyer agrees that if seller is unable to assign the contract to any one of the financial institutions with whom seller regularly does business . . . seller may elect to rescind the contract." *Buie*, 2001 WL 34570064, at *4.

institutions, with whom [the creditor] regularly does business under an assignment acceptable to [creditor]." The Court's research has revealed none.

"TILA and Reg[ulation] Z contain detailed disclosure requirements for consumer loans" *Semar v. Platte Valley Fed. Sav. & Loan Ass'n*, 791 F.2d 699, 703–04 (9th Cir. 1986). "To insure that the consumer is protected TILA and Reg[ulation] Z must be absolutely complied with and strictly enforced." *Id*. (original alterations omitted). *This is how TILA's purpose* of "avoiding the uninformed use of credit" *is accomplished*. *Jackson*, 890 F.2d at 120.

Simply put, "there is nothing in TILA or Regulation Z which prohibits financing contingencies in consumer contracts as violative of the TILA[.]" *Chastain v. N.S.S. Acquisition Corp.*, No. 08-81260-CIV, 2009 WL 1971621, at *4 (S.D. Fla. July 8, 2009), *aff'd*, 378 F. App'x 983 (11th Cir. 2010). Moreover, a provision in a TILA covered loan transaction that automatically cancels or gives the creditor the option to cancel the transaction if the creditor is unable to assign the contract on terms acceptable to the creditor simply does not make the already made TILA disclosures violate TILA. *See, e.g.*, *Leguillou v. Lynch Ford, Inc.*, No. 99 C 3449, 2000 WL 198796, at *3 (N.D. Ill. Feb. 14, 2000) ("Plaintiff entered into a fully binding contract with Lynch Ford. A condition subsequent was used to cancel the contract. This set of facts does not undermine the validity of the original TILA disclosures."); *Tripp v. Charlie Falk Auto*, No. CIV. 3:00CV512, 2001 WL 1105132, at *6 (E.D. Va. Aug. 22, 2001) ("If the financing condition had been satisfied, then Plaintiffs and Defendants would have been obligated under the terms of the contract. The fact that the financing condition never came about does not make the credit terms estimates."), *aff'd sub nom. Tripp v. Charlie Falk's Auto Wholesale Inc.*, 290 F. App'x 622 (4th Cir. 2008); *Baez v. Potamkin Hyundai, Inc.*, No. 09-21910-CIV, 2011 WL 13174894, at *5 (S.D. Fla. June 14, 2011) (rejecting the plaintiff's argument that the defendant's "option to cancel the contract if it cannot secure financing or assign the contract (i.e. predicating the [the contract] on a condition subsequent) renders the [contract] illusory and violates TILA"), *report and recommendation adopted*, No. 09-21910-CIV, 2011 WL 13174896 (S.D. Fla. July 11, 2011), *aff'd*, 458 F. App'x 827 (11th Cir. 2012).

Consequently, having carefully considered the matter, the Court holds "[a] seller's

unilateral right to cancel a sales contract or a contract conditioned upon seller-located financing, does not, by itself, violate TILA." *Clarke v. W. Palm Nissan, LLC*, No. 9:17-CV-81032, 2018 WL 521031, at *2 (S.D. Fla. Jan. 23, 2018) (citing *Bragg*, 374 F.3d at 1068).

The authorities cited by Plaintiff simply are not to the contrary. Only one warrants brief mention, *Patton v. Jeff Wyler Eastgate, Inc.*, 608 F. Supp. 2d 907 (S.D. Ohio 2007).[4] That case involved an indisputably TILA compliant installment contract that contained a "merger clause" providing that it "contain[ed] the entire agreement between [the parties] relating to the contract" and did not "reference or incorporate" any of the other documents signed by the plaintiffs. *Patton*, 608 F. Supp. 2d at 915. The TILA compliant installment contract "d[id] not make the validity of [that contract] contingent upon assignment." *Id*. The district court found a TILA violation in that case because "[t]he purpose of TILA would be frustrated if automobile dealerships are permitted to rescind the terms of integrated automobile retail installment sales contracts by *use of a second, contradictory form*." *Id*. at 915–16 (emphasis added).

In reaching this conclusion, the district court found "[s]pecial considerations militate[d] against the application of the general rule" that "a court may construe multiple documents together if they concern the same transaction." *Id*. at 915. The district court explained "[t]he language in the [second agreement] that 'financing for your purchase has not been finalized' *directly contradict[ed]* the terms of the [first agreement] wherein the TILA financing terms [we]re disclosed and [the defendant was] identified as the Creditor-Seller to whom payments [we]re due." *Id*. True, the TILA compliant agreement in *Patton* did "not make [its] . . . validity contingent upon assignment," while the second form purportedly authorized the defendant to "reclaim the purchased vehicle if the [first agreement] is not assigned to or the financing approved by a third party." *Id*. This supported finding a TILA violation because it was one of the identified inconsistencies that made the two contracts "impossible to reconcile" into "a coherent

---

[4] The string-citation in question cites to four cases, including *Patton*, with little in the way of discussion. (ECF No. 10 at 9–10.) *Salvagne v. Fairfield Ford, Inc.*, 794 F. Supp. 2d 826 (S.D. Ohio 2010), does not warrant separate discussion as it confronts much the same issue and relies heavily on *Patton* to resolve it. This is even more true for the third case, *Jefferson v. United Car Co., Inc.*, No. 14-13749, 2016 WL 3876607 (E.D. Mich. July 18, 2016), which applies *Patton* and *Salvagne* in the context of a motion for entry of default judgment. The fourth, *Lea*, is cited for the non-controversial proposition the Court has cited it for above — a plaintiff may recover under TILA even if she has not sustained "any actual damages." *Lea*, 755 F.3d at 254.

single contract." *Id*. Nothing in *Patton* suggests that a provision like the Seller's Right to Cancel provision in the instant action could not be included in an otherwise TILA compliant contract. *See id*. at 916 ("*Accordingly*, the Court holds that [the defendant] violated TILA by use of the Purchase Spot Delivery Agreement *to vitiate the terms* of the Installment Contract.") (emphasis added).

For the foregoing reasons, the first claim fails as a matter of law. As Plaintiff's legal theory is fatally flawed, the Court dismisses this claim with prejudice.

### B. Claim II: Violation of ECOA

Remarkably, the premise of Defendant's argument with respect to Plaintiff's second claim is that the factual allegations made against it in the Complaint are "misleading," "not true," and "false[]." (ECF No 9-1 at 5–6.) At this stage in the proceedings, it is *Plaintiff's* factual allegations that are taken as true and it is *she* who is to be given the benefit of every reasonable inference from her well-pleaded factual allegations. Consequently, Defendant's motion with respect to the second claim must be denied.

### C. Claim IV: Breach of the Implied of Covenant of Good Faith and Fair Dealing

The Complaint sets out the fourth claim in three sentences. The first incorporates by reference the preceding paragraphs in the Complaint. (ECF No.1 at ¶ 53.) The second sentence states that breach of the implied covenant resulted from Defendant's "misrepresenting material facts and omitting material facts" which constituted Defendant "not perform[ing] its obligations to Plaintiff in good faith[.]" (ECF No. 1 at ¶ 54.) The third sentence provides that "[t]he actions of Defendant as described in this Complaint constitute a breach of the good faith requirement[.]" (ECF No. 1 at ¶ 55.) Frankly, it is not entirely clear what Plaintiff intends her fourth claim to encapsulate.

Defendant's opening brief argues as follows: Plaintiff is complaining about Defendant exercising its rights under the express terms of the Seller's Right to Cancel provision, which Defendant contends cannot be a violation of the implied covenant. (ECF No. 9-1 at 6.) Although not clearly stated, the inescapable take away from the opposition is that the intended gravamen of Plaintiff's fourth claim is precisely that: Defendant breached the implied covenant of good faith

and fair dealing by doing what the Seller's Right to Cancel provision allows by its express terms. (*See* ECF No. 10 at 14–15.)

That is simply not how the implied covenant functions. When it comes to the implied covenant, "as a general matter, implied terms should never be read to vary express terms." *Carma Developers (Cal.), Inc. v. Marathon Dev. California, Inc.*, 2 Cal. 4th 342, 374 (1992). More particularly, the implied covenant of good faith and fair dealing is "plainly subject to the exception that the parties may, by express provisions of the contract, grant the right to engage in the very acts and conduct which would otherwise have been forbidden by an implied covenant of good faith and fair dealing." *Steiner v. Thexton*, 48 Cal. 4th 411, 419–20 (2010). Consequently, the fourth claim fails as a matter of law and is dismissed with prejudice.

### IV. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss (ECF No. 9) is GRANTED in part and DENIED in part. Accordingly, IT IS HEREBY ORDERED that the first, third, fourth, and fifth claims in the Complaint are dismissed with prejudice.

IT IS SO ORDERED.

Dated: 2/12/2018

Troy L. Nunley
United States District Judge